

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

April 24, 1939

Honorable Joe Monkhouse
Chairman Highway & Motor Traffic
House of Representatives
Austin, Texas

Dear Mr. Monkhouse:

Opinion No. O-657
Re: Constitutionality of
Senate Bill No. 75
as amended in Commit-
tee.

This is in reply to your letter of April 19, 1939, in which you request our opinion as to the constitutionality of the Committee Substitute for Senate Bill No. 75.

On April 11, 1939, this department wrote an opinion holding Senate Bill No. 75, as received from the Senate, unconstitutional.

The copy of Senate Bill No. 75 in its amended form which you have sent to us contains a number of amendments, the most important of which, in our opinion, are the following:

The definition of the term "broker" in Section 1 (a) has been amended so as to provide that:

"The term 'broker' shall not apply to or include any such person, firm, corporation or association of persons whatsoever unless and until the Railroad Commission of Texas, after notice and hearing, shall have determined, from credible and competent evidence introduced before it, or before some person authorized by present laws to conduct hearings for it, that such person, firm, corporation or association of persons has so conducted himself or itself in the course of the acts, transactions and things mentioned

venience and necessity, duly and properly issued
by the Railroad Commission of Texas under Chapter
270, General Laws 40th Legislature, 1927, as amended
at the First Called Session of the 41st Legislature
and any and all present and future amendments there-
to."

Paragraph (e½) of Section 1 has been added to the
bill. This paragraph empowers and authorizes the Railroad
Commission of Texas to make a determination, after giving
10 days notice, of the fact question as to whether or not
the status of a "broker" exists. Such paragraph, among
other things, provides that:

"Before the Commission determines that a person,
firm, corporation or association of persons is a
'broker' as that term is defined herein, it shall
make findings, based on competent and credible testi-
mony that the said person, firm, corporation or
association of persons has customarily or with rea-
sonable certainty brought about competition in the
transportation of persons for hire between one or
more motor bus companies, which have theretofore
been duly and properly issued one or more certifi-
cates of public convenience and necessity, on the
one hand, and other motor vehicles, not so certi-
fied, on the other hand."

Section 3 has been amended so as to omit therefrom
the provision in the original bill which made it unlawful
for a Travel Bureau, even though holding a broker's license,
to make any contract or arrangement for transportation unless
such contract or arrangement was made with the "lawful holder
of an effective certificate of convenience and necessity
issued by the Railroad Commission of Texas." Also, the last
sentence of Section 3 has been amended so as to except from
the provisions of the bill private individuals who, as a
mere incident to travel, enter into share-expense travel agree-
ments, if such individuals do not use the services of an
unlicensed "broker".

Section 6 of the bill has been amended so as to
provide that all "brokers" in transporting or causing to be
transported passengers on the highways of Texas shall be bound
by the tariffs, fares and rates approved of by the Railroad
Commission of Texas covering the transportation for hire
of persons over the highways of Texas. An additional reasonable
brokerage charge for the services of the broker is permitted
by Section 6 in addition to the rates set by the Railroad
Commission of Texas.

Section 7 of the bill authorizes the Railroad Commission, after notice and hearing, to make, adopt and enforce rules and regulations governing "brokers".

Section 8 of the bill requires that each "broker" shall file a bond or other security with the Commission, such bond to be conditioned that the State of Texas may recover a penalty of $25.00 plus the difference between the rates charged by a "broker" and the rate which should have been charged under section 6 of the bill.

Section 9 of the bill provides that a "broker" before transporting or causing to be transported any person for hire shall first protect such person by security, bond or insurance, approved by the Commission, against damage, loss and injury to the property possessed by such person and against damage, loss and injury resulting from such person's personal injury or death during such transportation, and also against any loss suffered by such person by reason of a "broker" failing to complete the carriage of a passenger according to the broker's agreement.

Section 10 of the bill makes detailed provisions for the giving of notice by the Railroad Commission for the promulgation of rules and regulations by the Commission.

Section 11 of the amended act is similar to Section 7 of the act covered by the opinion of April 11, 1939.

Section 12 provides for a hearing before the granting of a "broker's" license, also for a $25.00 filing fee to be paid with each application for license and also for a $25.00 annual license fee.

Section 13 of the amended bill is the same as Section 9 of the bill covered by our opinion of April 11, 1939.

Section 14 of the amended bill is similar to section 10 of the bill covered by our opinion of April 11, 1939.

Section 15 of the amended bill is similar to Section 11 of the bill covered by our opinion of April 11, 1939.

Section 16 of the amended bill is similar to Section 12 of the bill covered by our opinion of April 11, 1939.

Section 19 of the amended bill contains a Declaration of Policy which is similar to Section 15 of the bill

covered by our opinion of April 11, 1939, except that the
Declaration of Policy contained in the amended bill provides
that the activities regulated in the amended bill "interfere
with and obstruct the functions of the Railroad Commission
of Texas in connection with its control of motor bus companies
holding certificates of public convenience and necessity
issued by said commission."

We call to your attention that we have considered
as a part of the bill the amendments which are found in the
five sheets attached to the mimeographed copy of the bill
which you sent to us although such amendments have not been
incorporated in the body of the mimeographed copy of the bill
included in your letter.

As we stated in our opinion of April 11, 1939, we
fully recognize the power of the Legislature to make a con-
clusive determination of the propriety, wisdom and expediency
of legislation. In that opinion, we further recognized that
the Legislature can, if it desires, regulate the business
of Travel Bureaus provided such regulations are reasonable.

It will be noted that the Senate Bill 75 as now
amended will not affect any person or concern who operates
a travel bureau unless the Railroad Commission first finds
that such person or firm has so conducted himself or itself as
to bring about a "reasonably continuous or customary compe-
tition" with a motor bus company which holds a certificate
of convenience and necessity issued by the Commission. The
Declaration of Policy contained in Section 19 of the bill,
among other things, states that the Legislature finds that
the methods and practices regulated by Senate Bill 75 inter-
fere with and obstruct the functions of the Railroad Com-
mission of Texas in connection with its control of motor bus
companies holding certificates of public convenience and
necessity issued by the Commission.

Assuming, as we must, that reasonable grounds exist
for the findings contained in Section 19 of the bill, it fol-
lows that such findings provide a proper basis for regulation
by the Legislature of the activities described in the bill.
Ex parte Sparks, 108 Criminal Reports, 619, 2 S. W. (2) 449;
Ex parte Sepulveda 2 S. W. (2) 445.

The amendments which have been made to the bill
in question since the date of our previous opinion have, in
our opinion, cured the constitutional objections which were

made in our original opinion. Under the bill as now amended, the holder of a duly issued broker's license, although subject to regulation, is otherwise free to deal with any person and is not restricted to dealing with holders of certificates of public convenience and necessity as provided in the original bill.

As the appellate courts of this state have repeatedly upheld the constitutionality of Article 911a, which regulates motor bus transportation, we believe those courts will, likewise, uphold the constitutionality of the present bill, which attempts to regulate only such persons and corporations whose business and activities constitute a customary and continuous competition with motor bus companies in such manner as to frustrate, obstruct and interfere with the Railroad Commission in the exercise of its jurisdiction over the transportation of passengers for hire in Texas. In this connection, it is to be observed that the bill in its amended form does not attempt to regulate or deal with private individuals who as a mere incident to travel enter into share-expense agreements with individuals other than unlicensed "brokers".

The objections which we made in our opinion of April 11, 1939, to Section 11 of the original bill have been cured by the insertion of detailed provisions in the amended act providing for notice to all interested parties and a hearing before the promulgation of rules or regulations by the Railroad Commission.

As our examination of Senate Bill 75 in its amended form discloses no provisions which on their face are so unreasonable as to violate the Constitution of Texas or the Constitution of the United States we, therefore, hold that such bill is constitutional.

Yours very truly

ATTORNEY GENERAL OF TEXAS

(signed)

By

Robert E. Kepke
Assistant

REK:BT

APPROVED:
(Signed)
Gerald C. Mann
ATTORNEY GENERAL OF TEXAS